IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

Javon Stephenson, )
    Plaintiff, )
     )
v. )    1:14cv266 (TSE/IDD)
     )
Z. Diggs, et al., )
    Defendants. )

MEMORANDUM OPINION

Javon Stephenson, a Virginia inmate proceeding pro se, has filed a civil rights action pursuant to 42 U.S.C. § 1983, asserting that defendants violated his constitutional rights in several respects during his confinement at Virginia Beach Correctional Center ("VBCC"). Plaintiff submitted an application to proceed in forma pauperis in this lawsuit. By Order dated April 13, 2015, plaintiff was directed to particularize and amend his claims on a standard § 1983 complaint form. Plaintiff has complied with those instructions. Pursuant to plaintiff's Amended Complaint, the only remaining named defendants in this action are Corporal Gary Davenport, Deputy Paul Brannon, Ms. Purdie, Sheriff Ken Stolle, Sergeant Bendily, and the City of Virginia Beach.

Liberally construed, plaintiff's Amended Complaint sets out the following claims: (1) deliberate indifference to plaintiff's serious medical needs by Ms. Purdie; (2) cruel and unusual punishment due to the unconstitutional conditions of confinement at VBCC; and (3) violation of plaintiff's Eighth Amendment right to be free from cruel and unusual punishment against Deputy Paul Brannon, Corporal Gary Davenport, Sheriff Ken Stolle, and Sergeant Bendily. For the reasons that follow, plaintiff's Eighth Amendment claims will proceed against Ms. Purdie, Deputy Brannon, and Corporal Davenport, and the remainder of plaintiff's claims against all other

defendants must be dismissed for failure to state a claim.[1]

## I. Standard of Review

In reviewing a complaint pursuant to § 1915A, a court must dismiss a prisoner complaint that is frivolous, malicious, or fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1). Whether a complaint states a claim upon which relief can be granted is determined by "the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." Sumner v. Tucker, 9 F. Supp. 2d 641, 642 (E.D. Va. 1998); Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to meet this standard. Id. at 663. Moreover, plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 55. Finally, a court is "not bound to accept as true a legal

---

[1] Section 1915A provides:

> (a) **Screening.**—The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>
> (b) **Grounds for dismissal.**—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—
> (1) is frivolous, malicious, or fails to state a claim upon which relief can be granted; or
> (2) seeks monetary relief from a defendant who is immune from such action which plaintiff asserts is a federal offense.

conclusion couched as a factual allegation." Iqbal, 556 U.S. 678 (internal citations omitted).

## II. Background

Plaintiff alleges that on Sunday, March 14, 2012, he was housed in an Administrative Segregation Cell Block at VBCC. Am. Compl. ¶ 1. Allegedly, Corporal Gary Davenport and Deputy Paul Brannon woke plaintiff while attempting to place a rowdy, newly-arrested inmate into a cell near plaintiff's. Id. at ¶ 2. After the rowdy inmate threatened his potential cell mate with assault, the officers decided to place him into plaintiff's cell instead. Id. at ¶ 5. Plaintiff was directed to move to the bottom bunk to make room for the new inmate, and allegedly, as he started to move his belongings, the new inmate began threatening plaintiff. Id. at ¶ 9. Plaintiff alleges that he told the officers he did not want the rowdy inmate in his cell with him because he felt jeopardized and vulnerable. Id. at ¶ 9-12. Plaintiff alleges that, in order to avoid further issues with the already enraged inmate, he told the rowdy inmate to take the bottom bunk. Id. at ¶ 16. Plaintiff further alleges that he "never got out of his top bunk the entire [time] during the verbal confrontation with the deputies at the scene and the angry inmate." Id. at ¶ 25. Plaintiff also alleges that he made no assaultive threats and gave no physical indication that he intended to be combative. Id. At most, he only raised his voice to protest the deputies putting an already enraged and threatening inmate into the cell with him. Id. However, plaintiff alleges that the Corporal Davenport and Deputy Brannon both physically attacked him by punching him and aggressively removing his blanket from his body. Id. at ¶ 26-29.

Allegedly, "Corporal Davenport knocked-out the plaintiff's front dental crown, breaking his his [sic] tooth while also cutting [and] brusing [sic] his nose, lips and cheeks with his blows." Id. at ¶ 31. Allegedly, plaintiff was thrown to the floor, his genitals were wedged in between the rails on the bed, he was punched many times, and he was pepper-sprayed in the face repeatedly.

Id. at ¶ 32-33. Plaintiff alleges that Corporal Davenport's and Deputy Brannon's actions constituted cruel and unusual punishment under the Eighth Amendment.

After the alleged attack by defendants Davenport and Brannon, plaintiff was taken to a facility nurse where an emergency dental appointment was scheduled for the next day. Id. at ¶ 35. At the dental visit, plaintiff saw the VBCC facility dentist, Dr. Thomas, who told plaintiff that he "couldn't do anything at the facility to remedy the plaintiff's injuries and that he would have to refer the plaintiff to be seen by an outside health specialist." Id. at ¶ 44-45. On May 11, 2012, two months after the attack, plaintiff alleges that he still had not been seen by an outside specialist, and he filed a grievance based upon the amount of time it was taking to see the outside doctor. Id. at ¶ 46. Plaintiff alleges that by July 2012, he still had not been seen by an outside specialist, and he filed another grievance. Id. at ¶ 47-48. Plaintiff alleges that Ms. Purdie is responsible for setting up inmates' outside dental and healthcare appointments. Id. at ¶ 49. In July 2012, Ms. Purdie allegedly told plaintiff that he would need to make payment arrangements with the VBCC Health Administration in order to have his oral injury remedied by an outside specialist. Id. at ¶ 50. At the end of August 2012, after plaintiff allegedly contacted Ms. Purdie several times about his outside dental appointment, Ms. Purdie explained to plaintiff that she had previously expressed his concerns to the appropriate individuals and she was still awaiting their responses. Id. at ¶ 54. This was allegedly the last time plaintiff heard anything from Ms. Purdie; however, he admits to being seen by Dr. Thomas at least four times at VBCC in the seven months subsequent to his injury. Id. at ¶ 58-59. Plaintiff also admits that jail officials explained to him that "paying for the treatment in advance was the only way that the plaintiff would get treated."[2] Id. at ¶ 59.

---

[2] It is unclear why plaintiff was required to pay for medical or oral treatment related to his oral injury. The government is "obligat[ed] to provide medical care for those whom it is punishing by

However, plaintiff alleges that Ms. Purdie failed to provide the necessary outside dental treatment recommended repeatedly by Dr. Thomas.

Finally, plaintiff alleges that Kenneth Stolle, Bendilly, and the City of Virginia Beach subjected plaintiff to a historically recognized and well-established form of cruel and unusual punishment. Specifically, between February 2, 2012 and September 15, 2012, plaintiff alleges that he was subjected to "24-hour lighting in his cell that he adamentally [sic] complained to VBCC officials about being to [sic] bright and adversely affecting the plaintiff's sleep patterns." Id. at ¶ 53.

### III. Analysis

1. <u>Claim Against the City of Virginia Beach</u>

Plaintiff's claim against the City of Virginia Beach must be dismissed under § 1915A for failure to state a claim. To state a claim under § 1983, the defendant must be a "<u>person</u> who, under color of any statute, ordinance, regulation, custom, or usage, or any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983; <u>see also</u> <u>West</u>, 487 U.S. at 48. To hold a municipality liable under § 1983, a plaintiff must show that the "action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision [that has been] officially adopted and promulgated by that body's

---

incarceration." <u>Estelle v. Gamble</u>, 429 U.S. 97, 102 (1976). This obligation arises from an inmate's complete dependency upon prison medical staff to provide essential medical services. <u>Id.</u> A prisoner has a right to receive needed medical treatment; however, the allocation of expenses is a matter of state law. See <u>Revere v. Massachusetts General Hospital</u>, 463 U.S. 239 (1983); <u>Formica v. Aylor</u>, No. 7:14CV00449, 2015 WL 4648009, at *3 (W.D. Va. Aug. 5, 2015) (internal citations omitted) ("[a] prison official who withholds necessary medical care, for want of payment, from an inmate who could not pay would violate the inmate's constitutional rights if the inmate's medical needs were serious, because refusal to act pending the impossible is no different from refusing without qualification").

officers." Monnell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978). The City of Virginia Beach is not considered a "person" under § 1983, and plaintiff does not make any allegations that state a claim for municipal liability; therefore, the claim against the City of Virginia Beach must be dismissed.

### 2. Unconstitutional Conditions of Confinement Claims Against Ken Stolle and Sergeant Bendilly

Plaintiff makes additional allegations regarding the conditions of confinement faced by inmates in solitary confinement at VBCC. Plaintiff alleges that lights in and around his solitary confinement cell are left on 24 hours per day, which he alleges has "adversely affect[ed]" his sleep patterns. Am. Compl., ¶ 63. Plaintiff contends that defendants Ken Stolle and Sergeant Bendily acted deliberately indifferent to these conditions and continued to keep the lights on, which allegedly amounted to cruel and unusual punishment.

To establish an actionable claim of cruel and unusual punishment that violates a plaintiff's Eighth Amendment rights, a plaintiff must allege and prove: (1) an objectively serious deprivation of a basic human need, one causing serious physical or emotional injury; and (2) that prison officials acted with deliberate indifference to his needs. Farmer v. Brennan, 511 U.S. 825, 834 (1994); see Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (defining serious deprivation as evidence of a serious medical and emotional deterioration attributable to the challenged condition). As to the first prong, the Supreme Court has stated that "[t]he Constitution, 'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities,' are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson v. Seiter, 501 U.S. 294, 298 (1991) (citing Rhodes v. Chapman, 452 U.S. 337, 347, 349 (1981)). Thus, the deprivation must result in a serious injury

to the prisoner. Strickler, 989 F.2d at 1381 ("If a prisoner has not suffered serious or significant physical or mental injury as a result of the challenged condition, he simply has not been subjected to cruel and unusual punishment within the meaning of the [Eighth] Amendment.").

Here, plaintiff does not allege that he personally suffered any serious injury as the result of the prison condition he describes. Although plaintiff was disturbed by the lighting in the solitary confinement unit at VBCC, at no point does plaintiff state that he was harmed seriously by these circumstances. Without any physical or mental injury to himself, plaintiff has not been a victim of cruel and unusual punishment, and his claims against Sheriff Stolle and Sergeant Bendily must be dismissed for failure to state a claim pursuant to § 1915A(b)(1). Strickler, 989 F.2d at 1381.

### 3. No Supervisory Liability of Sheriff Ken Stolle

The claims against Sheriff Ken Stolle must also be dismissed because Sheriff Stolle cannot be held liable to plaintiff based upon his supervisory role. Plaintiff alleges that Sheriff Stolle should be held liable for "instituting the clearly-established unconstitutional policy which injured the plaintiff for a substantial amount of time." See Am. Compl.

To state a cause of action under § 1983, a plaintiff must allege facts indicating he was deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. See West v. Atkins, 487 U.S. 42 (1988). Thus, each named defendant must have had personal knowledge of and involvement in the alleged violations of plaintiff's constitutional rights for the action to proceed against him. Although plaintiff mentions defendant Sheriff Ken Stolle at several points in the amended complaint, plaintiff does not allege that Sheriff Stolle personally caused any of the deprivations plaintiff asserts, so it appears that plaintiff seeks to hold Sheriff Stolle liable in his supervisory capacity. Supervisory officials may be held liable in certain

7

circumstances for the constitutional injuries inflicted by their subordinates. See Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994) (citing Slakan v. Porter, 737 F.2d 368 (4th Cir. 1984)). This liability is not premised on respondeat superior, but upon "a recognition that supervisory indifference or tacit authorization of subordinates misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." Id. at 798 (quoting Slakan, 737 F.2d at 372-73). "[L]iability ultimately is determined 'by pinpointing the persons in the decisionmaking chain whose deliberate indifference permitted the constitutional abuses to continue unchecked.'" Id. at 798 (quoting Slakan, 737 F.2d at 376). In order to establish supervisory liability under § 1983, a plaintiff must demonstrate:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Id. at 799 (citations omitted). Here, plaintiff offers no facts to demonstrate that Sheriff Stolle had actual or constructive knowledge that his subordinates were engaged in conduct that posed a "pervasive and unreasonable risk" of constitutional injury to plaintiff. Thus, plaintiff fails to allege any facts indicating that Sheriff Stolle is liable to him, and the claim against Sheriff Stolle must be dismissed in this action for failing to state a claim of supervisory liability.

### IV. Service

In compliance with the Court's previous Order, plaintiff has submitted an application to proceed in forma pauperis and has consented to pay an initial filing fee and to make subsequent payments, pursuant to 28 U.S.C. § 1915(b), until he has paid the full $350.00 filing fee. Plaintiff's institution supplied information on plaintiff's inmate account reflecting that, for the past

six months, plaintiff had an average monthly deposit of $33.46 to his inmate account, had an average monthly balance of $26.01, and a balance of $0.00 at the time of inquiry. Therefore, plaintiff will be required to pay an initial filing fee of $6.69, which is twenty percent (20%) of the greater of the average monthly deposits or balance for the last six months preceding filing of this complaint. See 28 U.S.C. § 1915(b)(1). After submitting his initial filing fee, plaintiff will be required monthly to remit to the Clerk twenty percent (20%) of any income into the plaintiff's inmate account, if that income causes his inmate account balance to exceed $10.00. 28 U.S.C. § 1915(b)(2). This shall continue until the full filing fee has been paid, even after the case is resolved or dismissed, if necessary.

## V. Conclusion

The claims will proceed against Ms. Purdie, Deputy Brannon, and Corporal Davenport, and the remainder of plaintiff's claims against all other defendants must be dismissed pursuant to § 1915A(b)(1) for failure to state a claim. An appropriate Order will issue.

Entered this 22d day of December 2015.

Alexandria, Virginia

/s/
T. S. Ellis, III
United States District Judge