# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF VIRGINIA

## Alexandria Division

| | |
|---|---|
| Javon Stephenson, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:14cv266 (TSE/IDD) |
| ) | |
| Z. Diggs, et al., ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Javon Stephenson, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that jail officials used excessive force against him during a cell extraction and showed deliberate indifference to his serious medical needs at the Virginia Beach Correctional Center ("VBCC"). The defendants in this case, Corporal Gary Davenport and Deputy Paul Brannon, have filed a Motion for Summary Judgment, as well as a memorandum of law and supporting exhibits. Dkt. Nos. 32, 33. Plaintiff has filed a response. For the reasons that follow, defendants' Motion for Summary Judgment must be granted. Additionally, the claims against Ms. Purdie must be dismissed without prejudice.

### I. Factual Background[1]

At all times relevant to this lawsuit, plaintiff was incarcerated at the VBCC and assigned to block A4a, cell 6, in administrative segregation because of his prior behavior and "previous assaults." Dkt. No. 33, Ex. 1. This case arises out of a cell extraction that occurred at VBCC on March 11, 2012. On that date, VBCC deputies, including Deputy Brannon, were attempting to admit a new inmate to the empty bunk in plaintiff's cell. Dkt. No. 33, Ex. 2 ("Brannon Aff.").

---

[1] The facts recited here are derived from plaintiff's amended complaint (Dkt. No. 19), and the affidavits of Deputy Brannon and Corporal Davenport (Dkt. No. 33, Exs. 2, 3). Where factual conflicts exist, their materiality, if any, is noted.

Although plaintiff had been assigned to the bottom bunk in cell 6, he was located in the top bunk at that time. Id.

The deputies directed plaintiff several times to move from the top bunk to the bottom bunk, so that the new inmate could be admitted to his assigned upper bunk. Id. Plaintiff admits that he refused these orders to move. Id. When Deputy Moore again ordered plaintiff to move, plaintiff became verbally abusive, shouting, "I don't give a shit what you guys do. I'm in admin. seg. There's no reason for me to be in admin. seg." Id. While yelling at Deputy Moore, plaintiff remained on the top bunk, refusing to comply with the Deputy's instructions. Id.

Corporal Davenport, the A wing supervisor, became aware of the escalating situation and approached plaintiff's cell to inquire about the status of the new inmate's move into the top bunk of cell 6. Dkt. No. 33, Ex. 3 ("Davenport Aff."). The deputies informed Corporal Davenport that plaintiff was refusing to comply with the deputies' instructions to move to the bottom bunk so that the new inmate could be admitted to the top bunk. Id. Corporal Davenport then himself ordered plaintiff to move to the bottom bunk. Id. Plaintiff again refused. Id. Corporal Davenport then instructed plaintiff to pack his belongings in order to be relocated to another cell.[2] Id. According to Corporal Davenport, plaintiff refused to be relocated to another cell and again refused to move from the top bunk. Id. In fact, plaintiff responded to Corporal Davenport by lying back down on the top bunk. Id.

At this point, Corporal Davenport directed Deputy Repass to open the door to cell 6, and Corporal Davenport then entered the cell with Deputy Brannon for the purpose of physically extracting plaintiff from the cell. Brannon Aff.; Davenport Aff. For this purpose, Corporal

---

[2] Plaintiff claims he was never told to pack his belongings in order to be relocated to another cell. Dkt. No. 40 at 1. This factual dispute is not material to the resolution of the issues presented.

2

Davenport stepped onto the bottom bunk to give himself the leverage he needed to remove plaintiff from the top bunk. Davenport Aff. Corporal Davenport then sought to grasp plaintiff's jumpsuit sleeve and the waist section of the jumpsuit. At that point, plaintiff struck Corporal Davenport on the right side of his face.[3] Id.; Dkt. No. 33, Ex. 4 ("3/11/12 Inc. Rep."). Deputy Brannon and plaintiff both heard Corporal Davenport say, "You don't hit me." Brannon Aff. In order to ensure that plaintiff would not strike him again, Corporal Davenport struck plaintiff with a hammer strike. Davenport Aff.; Dkt. No. 33, Ex. 5.

Corporal Davenport and Deputy Brannon then physically removed plaintiff from the top bunk and placed him onto the floor, where plaintiff continued to resist actively by kicking and refusing to allow defendants to cuff his hands. Brannon Aff.; Davenport Aff.; 3/11/12 Inc. Rep. Deputy Broderick then entered the cell to assist in subduing plaintiff and removing him from cell 6. Id. Deputy Brannon used pepper spray in an attempt to quell plaintiff, and when he was unsuccessful, he sprayed a second, more effective burst. Id.; see also Dkt. No. 33, Ex. 5. At that point, the deputies successfully removed plaintiff from the cell to the dayroom where he was subsequently handcuffed, offered medical attention, and transported to the medical unit. Brannon Aff.; Davenport Aff.

The Incident Report notes that plaintiff sustained superficial and mild injuries as a result of the cell extraction.[4] 3/11/12 Inc. Rep. Plaintiff lost a tooth during the course of the incident;

---

[3] Plaintiff disputes that he struck Corporal Davenport, but he admits that his hand came into contact with Corporal Davenport's body. Dkt. No. 40 at 3. This factual dispute is immaterial because Corporal Davenport was reasonable in concluding that plaintiff either struck him or intended to strike him.

[4] Plaintiff alleges that he suffered from severe injuries and that he deals with lasting emotional impact as a result of the March 11, 2012 cell extraction. See Dkt. No. 40. This factual dispute is immaterial because the injuries noted on the Incident Report are consistent with Deputy

3

however, his only other injuries were superficial "bruises and cuts." Id.; Dkt. No. 19 at 9.

Plaintiff, in the course of a follow-up interview on April 2, 2012 with internal affairs officers, admitted to being located in the wrong bunk on March 11, 2012, and to refusing the deputies' repeated orders to move to the bottom bunk so that a new inmate could be admitted to his assigned top bunk in cell 6. Dkt. No. 33, Ex. 6 ("Clark Aff.") Plaintiff also admitted that his hand did in fact make physical contact with Corporal Davenport. Id. Similarly, in the course of his disciplinary hearing, plaintiff again admitted to being located in the wrong bunk and to disobeying staff members' numerous orders to move to the bottom bunk. Dkt. No. 33, Ex. 7. Plaintiff has filed multiple grievances related to the incident, thereby exhausting his administrative remedies.

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that he is entitled to judgment as a matter of law, the burden then shifts to the nonmoving party to point out the specific facts that create disputed material issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In

---

Brannon and Corporal Davenport's affidavits concerning the manner in which they had to exert control over plaintiff under the circumstances.

evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

Those facts which the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence . . . create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Commc'ns Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985), abrogated on other grounds by Price Waterhouse v. Hopkins, 490 U.S. 228 (1989). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the nonmoving party. Matsushita, 475 U.S. at 587.

### III. Analysis

The Eighth Amendment's prohibition on cruel and unusual punishment prohibits prison administrators from inflicting "unnecessary and wanton infliction of pain" on inmates. Wilson v. Seiter, 501 U.S. 294, 297 (1991) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). Because the Eighth Amendment does not prohibit prison officials from all uses of force, only uses of force that actually inflict such unnecessary and wanton pain violate the Eighth Amendment. See, e.g., Whitley v. Albers, 475 U.S. 312, 319 (1986) ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the [Eighth Amendment]."). When analyzing a claim of excessive force, therefore, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992); see also Whitley, 475 U.S. at 320.

"One acts 'maliciously' by undertaking, without just cause or reason, a course of action intended to injure another; in contrast, one acts 'sadistically' by engaging in extreme or excessive cruelty or by delighting in cruelty." Cherry v. Sherin, No. 3:10CV434, 2012 WL 664203 (E.D. Va. Feb. 28, 2012), quoting Howard v. Barnett, 21 F.3d 868, 872 (8th Cir. 1994).

The Supreme Court has identified a number of "factors to assist courts in assessing whether an officer has acted with wantonness." Iko v. Shreve, 535 F.3d 225, 239 (4th Cir. 2008) (internal quotation marks omitted). These include: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) any efforts made to temper the severity of a forceful response. Whitley, 475 U.S. at 321. Additionally, although not dispositive, the extent of injury suffered by the inmate is relevant to the subjective inquiry, as it "may suggest whether the use of force could plausibly have been thought necessary in a particular situation." Wilkins v. Gaddy, 559 U.S. 34, 38 (2010). By considering these factors, courts in specific cases can determine whether the force used could reasonably have been considered necessary, or whether it "evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." Id.; see also Wilkins, 559 U.S. at 36.

The factors applied to the facts in this case establish that the force used to extract plaintiff from his cell was reasonable. Based upon the record and plaintiff's admissions, it is clear that plaintiff was located in the wrong bunk on March 11, 2012 and that he disobeyed multiple orders to move to the bottom bunk to which he had been assigned. Plaintiff's repeated refusals and defiance reasonably led Corporal Davenport and Deputy Brannon to believe that he was attempting to assert his authority over them and the other jail officials. Thus, in order to

maintain order and restore discipline, Corporal Davenport and Deputy Brannon were compelled to enter plaintiff's cell to remove plaintiff physically from the top bunk and the cell.

Further, plaintiff admits that he made "incidental contact" with Corporal Davenport. Dkt. No. 40 at 3. This uncontested evidence belies plaintiff's assertion that Corporal Davenport and Deputy Brannon used force maliciously, sadistically, and intentionally to cause harm to him. In fact, a direct attack on a prison guard clearly suggests that defendants reasonably believed they needed to use the application of force in order to restore discipline in plaintiff's cell. It was prudent and rational for Corporal Davenport to perceive a physical threat from plaintiff because plaintiff had in fact already made physical contact with Corporal Davenport. The uncontested evidence demonstrates that both defendants used physical force only to maintain discipline and to control the situation in cell 6 on March 11, 2012.

The record does not reflect that plaintiff sustained any serious injuries as a result of this incident. This Court can rely upon the Incident Report, which clearly shows that plaintiff sustained only superficial or mild injuries that are consistent with Deputy Brannon's and Corporal Davenport's affidavits concerning the manner in which they both had to control plaintiff under the circumstances. 3/11/12 Inc. Rep. Although plaintiff did lose a tooth during the March 11, 2012 incident, the Report does not reflect any significant injuries consistent with plaintiff's conclusory allegations.[5]  Id.; see also Dkt. No. 19 at 9 (noting the plaintiff had

---

[5] As a general rule, the non-moving party may not defeat a properly-supported summary judgment motion by simply substituting the "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990). Even where the non-moving party in such a situation is a pro se prisoner entitled to liberal construction of his pleadings, a "declaration under oath . . . is not enough to defeat a motion for summary judgment. He has to provide a basis for his statement. To hold otherwise would render motions for summary judgment a nullity." Campbell-El v. Dist. of Columbia, 874 F. Supp. 403, 406-07 (D.C. 1994).

superficial "bruises and cuts").

Analogous authority supports the result in this case. In a case which appears to be strikingly on point with the instant action, the administrator for the estate of a deceased detainee sued law enforcement officials for, inter alia, using excessive force to extract the decedent, Gerald Collins, from his cell. Collins was acting "belligerently" and sticking his arm through the food slot of his cell door, and when officers ordered him to get his hand back in his cell he refused. See Grayson v. Peed, 195 F.3d 692, 694 (4th Cir. 1999), cert. denied sub nom. Grayson v. Royer, 529 U.S. 1067 (2000). In an effort to distract Collins, officers opened his cell door slightly, and Collins jammed his foot into the doorway. The decision was made to extract Collins from the cell, and a five-man cell extraction team entered the cell and pinned Collins face down. During the ensuing struggle Collins was punched seven to nine times, and once he was restrained, the officers carried him face-down to an adjoining cell. Collins continued to struggle, and was placed in four-point restraints. Shortly thereafter, Collins became unconscious, and later stopped breathing. He was transported to a hospital, where he died the following day.[6] Id. Defendants' motion for summary judgment on the estate's claim that excessive force was used in extracting Collins from his cell was granted by Judge Albert V. Bryan, Jr. of the District Court for the Eastern District of Virginia, and plaintiff appealed. The Fourth Circuit Court of Appeals upheld that result, finding that the officers applied force "in a good faith effort to maintain or restore discipline." Grayson, 195 F.3d at 696. The appellate court noted:

In dealing with such agitated detainees prison officials must not be forced to walk

---

[6] Collins' death was due to an enlarged heart and PCP intoxication. Grayson, 195 F.3d at 698.

> a tightrope and face the prospect of a lawsuit no matter which way they turn. See Gooden v. Howard County, 954 F.2d 960, 967 (4th Cir. 1992)(en banc). If officers attempt to restrain a detainee such as Collins, they risk an excessive force claim. On the other hand, if they fail to restrain such a detainee they could be subject to another lawsuit brought by other detainees or even the obstreperous detainee himself. See Farmer v. Brennan, 511 U.S. 825, 833, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ("[P]rison officials can be held liable for failing to protect one prisoner from harm caused by other prisoners); Lee v. Downs, 641 F.2d 1117, 1121 (4th Cir. 1981) ("[P]rison officials have a duty to protect prisoners from self-destruction or self-injury."). Here the officers obviously felt the need to subdue Collins, either to calm the general environment or to prevent Collins from hurting himself. If we failed to accord due deference to the officers' efforts, we would give encouragement to insubordination in an environment which is already volatile enough.

Grayson, 195 F.3d at 696-97.

It is clear that not every malevolent touch by prison guards amounts to a deprivation of constitutional rights. Hudson, 503 U.S. at 9. When analyzing whether officers used force reasonably in the context of an actual prison disturbance, such as here, courts must defer to the reasonable judgment of prison officials, and may not "substitute their judgment for that of officials who have made a considered choice." Whitley, 475 U.S. at 322; see also Bell v. Wolfish, 441 U.S. 520, 547 (1979) (internal citations omitted). Often, prison officials must "balance the need to maintain or restore discipline through force against the risk of injury to inmates. Both situations may require prison officials to act quickly and decisively." Hudson, 503 U.S. at 6 (internal citations omitted).

In this case, the record suggests that plaintiff's defiance and aggression reasonably provoked Deputy Brannon or Corporal Davenport to enter plaintiff's cell to extract him. Plaintiff was acting verbally and physically resistant and aggressive, which was hazardous to the prison guards and overall safety within the prison. As a result of his own disobedient and resistant behavior, plaintiff may have been removed from the top bunk uncomfortably; however,

this does not rise to the level of a constitutional violation.

This Court is faced with plaintiff's conclusory allegations regarding both Deputy Brannon and Corporal Davenport applying excessive force against him; however, such force must be measured in light of the record evidence that plaintiff refused to cooperate reasonably with multiple prison guards' repeated orders to move, that plaintiff physically contacted Corporal Davenport, and that plaintiff had to be physically removed from the top bunk in order to maintain control over him. Considering the totality of the circumstances in the light more favorable to the plaintiff, he has failed to demonstrate a genuine issue of material fact as to whether defendants' actions in dealing with his disruptive behavior were sufficiently egregious to violate the Eighth Amendment. That being so, entry of summary judgment for defendants is appropriate.

Finally, plaintiff named Health Department Administrator Ms. Purdie as a defendant in this case. See Dkt. No. 19. Plaintiff was advised that if the Court was unable to effect service on any named defendant through the December 22, 2015 Order and the defendant was not otherwise served within 120 days of filing,[7] that defendant would be dismissed from the instant action without prejudice. Dkt. No. 25; see also Fed. R. Civ. P. 4(m). Over 180 days have passed since December 22, 2015, and despite several attempts, Ms. Purdie has not been served.

---

[7] For purposes of calculation, the complaint was deemed as filed on the same date as this Order, December 22, 2015.

## IV. Conclusion

For the foregoing reasons, the claims against defendant Ms. Purdie must be dismissed without prejudice, and defendants, Corporal Davenport and Deputy Brannon's, Motion for Summary Judgment must be granted. An appropriate Order shall issue.

Entered this 30th day of June 2016.

Alexandria, Virginia

/s/
T. S. Ellis, III
United States District Judge